THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* AMERICAN SOCIALIST SOCIETY, Defendant.

First Department, July 14, 1922.

Schools — constitutional law — Laws of 1921, chap. 667, adding § 79 to Education Law prohibiting certain schools from giving instruction without license from University of State of New York — statute aimed at teaching of doctrines advocating overthrow of government by force — not unconstitutional as being unlimited in scope — State has power to pass statutes for its self-preservation — statute is not discriminatory — statute is proper exercise of police power and does not constitute class legislation — continued maintenance of Rand School of Social Science enjoined.

Chapter 667 of the Laws of 1921, adding section 79 to the Education Law, which prohibits certain schools from giving instruction without first procuring a license from the University of the State of New York and which provides that no license shall be granted for the conduct of any school where it shall appear that the instruction proposed to be given includes " the teaching of the doctrine that organized government shall be overthrown by force, violence or unlawful means," is clearly limited in its application to the ordinary subjects taught in school and prohibits the teaching of doctrines inimical to our form of government and tending to the destruction of organized government by force and violence and is not unconstitutional on the ground of general and unlimited application.

It is within the power of the Legislature to enact statutes for the self-preservation of the State and to prevent the teaching of doctrines advocating the destruction of the State by force.

The Legislature has as much right to enact a statute to prevent the promulgation of doctrines inimical to our form of government, the putting into effect of which would lead to the conviction of those who had adopted said doctrines under existing penal laws, as to punish those who are guilty of violating such penal laws.

Said statute is not unlawfully discriminatory, for all that it is necessary for the defendant, or for any school applying for a license under the act, to show is that its curriculum does not include the teaching of the inhibited doctrines,

and having shown this the Regents of the University have no discretion but to issue the required license.

Said statute is within the proper exercise of the police power of the State, for it has as its object the promotion of the safety, peace, order, morals and general welfare of our citizens, and the prescribed measure is reasonably necessary to accomplish the desired end.

Said statute does not constitute class legislation and there is no unlawful discrimination against the defendant or against any other person, firm or corporation, though there is excepted from its application certain public schools and schools maintained by religious denominations and fraternal orders.

The defendant, having failed and refused to make application for a license to operate the Rand School of Social Science, an injunction should be granted enjoining the continued maintenance or conduct of said school.

GREENBAUM, J., dissents.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 546 of the Civil Practice Act.

*Charles D. Newton, Attorney-General [Samuel A. Berger, Special Deputy Attorney-General,* of counsel; *Frederick R. Rich, Special Deputy Attorney-General, James Dunne* and *A. E. Stevenson* with him on the brief], for the plaintiff.

*Morris Hillquit* of counsel, for the defendant.

MERRELL, J.:

The defendant, for some years prior to September 1, 1921, conducted and operated a school, classes and courses of instruction at No. 7 East Fifteenth street, in the borough of Manhattan, county and city of New York, under the name and title of Rand School of Social Science. At the session of the Legislature held in 1921, chapter 667 of the Laws of that year was passed, which was an act to amend the Education Law in relation to licensing and supervision of schools and school courses and making an appropriation therefor. This statute took effect September 1, 1921, and amended chapter 21 of the Laws of 1909, entitled "An act relating to education, constituting chapter sixteen of the Consolidated Laws," as amended by chapter 140 of the Laws of 1910, by inserting therein at the end of article 3 a new section, to be section 79, to read as follows:

" § 79. Licenses of schools; supervision. 1. No person, firm, corporation, association or society shall conduct, maintain or operate any school, institute, class or course of instruction in any subjects whatever without making application for and being granted a license from the University of the State of New York to so conduct, maintain or operate such institute, school, class or course. Such application shall be made in the form and under the rules prescribed by the Regents of the University of the State. The application for

41

such license shall be accompanied with a verified statement showing the purposes for which the school, institute, class or course is to be maintained and conducted, and the nature and extent and purpose of the instruction to be given. No license shall be granted for the conduct of any such school, institute, class or course by the Regents of the University of the State where it shall appear that the instruction proposed to be given includes the teaching of the doctrine that organized governments shall be overthrown by force, violence or unlawful means, or where it shall appear that such school, institute, class or course is to be conducted in a fraudulent manner.

" Licenses shall not be required for the public schools of the city, union free and common school districts of the State nor for educational institutions which are now or may hereafter be incorporated by the University of the State or which are now or may hereafter be admitted to membership in the University of the State; nor shall such license be required of schools now or hereafter established and maintained by a religious denomination or sect well recognized as such at the time this section takes effect; nor shall such license be required for classes conducted by fraternal orders duly incorporated under the laws of this State which have for their purpose solely the instruction of their members in the ritual of such orders. A school, institute, class or course licensed as provided in this section shall be subject to visitation by officers and employees of the University of the State of New York.

" 2. A license granted to a school, institute, class or course as provided herein shall be subject to revocation by the Regents of the University upon due notice after an opportunity to be heard before the Board of Regents or a committee thereof or an officer of the Education Department in each case designated by the Board of Regents. Such license shall be revoked when it shall appear to the satisfaction of the Regents that there is being taught in such school, institute, class or course the doctrine that organized government should be overthrown by force, violence or unlawful means, or that the same is being conducted in a fraudulent manner. The action of the Regents of the University of the State in refusing to grant a license to any applicant as provided in this section or in revoking a license previously issued shall be subject to review by certiorari in the Supreme Court of the State, as provided by law.

" 3. Any person, firm, corporation, association or society, or any representative or employee thereof, maintaining or conducting a school, institute, course or class without a license granted as herein provided shall be guilty of a misdemeanor and upon conviction therefor shall be punished by a fine not exceeding one hundred

dollars, or by imprisonment not exceeding sixty days. Whenever it shall appear that any person, firm, corporation, association or society is maintaining or conducting a school, institute, course or class without such license an appropriate action and injunction proceedings may be brought on behalf of the State by the Attorney-General to restrain such person, firm, corporation, association or society, or any employee or representative thereof, from continuing the maintenance or conduct of such school, institute, course or class without such license.

" § 2. The sum of ten thousand dollars ($10,000), or so much thereof as may be necessary, is hereby appropriated for the purpose of carrying into effect the provisions of section seventy-nine of the Education Law as added by this act.

" § 3. This act shall take effect September first, nineteen hundred and twenty-one."

In the agreed statement of facts it is stipulated as follows:

"*First.* The defendant at all the times hereinafter mentioned was and now is a membership corporation organized and existing under and by virtue of the Laws of the State of New York and has its principal office in the Borough of Manhattan, County and State of New York.

"*Second.* The defendant for a number of years prior to the first day of September, 1921, has been and it still is conducting, maintaining and operating a school and classes and courses of instruction within the meaning of the provisions of Chapter 667 of the Laws of 1921, at No. 7 East 15th Street, in the Borough of Manhattan, County and State of New York, under the name and title of ' Rand School of Social Science.'

"*Third.* That the defendant has actively begun to conduct certain courses of instruction above mentioned after the first day of September, 1921, and that it is still continuing to conduct such courses of instruction.

"*Fourth.* That the Rand School of Social Science thus conducted by the defendant is not a public school of a city, not a school of a union free, or common school district of the State of New York, nor an educational institution incorporated by the University of the State of New York, or admitted to membership in the said University of the State of New York; that the said Rand School of Social Science is not established and maintained by a religious denomination or sect and that the courses and classes so conducted by the said defendant under the said name and title of Rand School of Social Science are not classes conducted by fraternal orders under the Laws of the State of New York which have for their purpose solely the instruction of their members in the ritual of such orders.

"*Fifth.* That the defendant has failed and refused and still fails and refuses to make application for a license from the University of the State of New York to conduct, maintain or operate the said Rand School of Social Science and the classes or courses conducted by the same, and that no such license to so conduct the said school, classes or courses has been granted to the defendant.

"*Sixth.* That the defendant purposes and threatens to continue conducting, maintaining and operating the said Rand School of Social Science and certain classes and courses without making application for and being granted a license from the University of the State of New York to so conduct, maintain and operate such school, classes and courses of instruction.

"*Seventh.* The plaintiff demands judgment against the defendant that the said defendant and all employees and representatives of the defendant and its agents, servants and attorneys be forever enjoined and restrained from continuing the maintenance or conduct of the said Rand School of Social Science, or of any school, courses or classes of instruction under any name or title without making application for and being granted a license from the University of the State of New York to so conduct, maintain, or operate such school, classes or courses of instruction, with costs and disbursements of this action.

"*Eighth.* The defendant demands judgment dismissing the plaintiff's complaint herein with costs."

The demand of the defendant for judgment dismissing the plaintiff's complaint is upon the ground that the said act of the Legislature is unconstitutional in that it deprives persons of liberty and property without due process of law, and is violative of the provisions of section 1 of the Fourteenth Amendment to the Constitution of the United States and of article 1, sections 1 and 6, of the Constitution of the State of New York for the reason aforesaid, and in that it denies applicants for a license the equal protection of the law. It is the further contention of the defendant that the act here under review is unconstitutional and violates the provisions of article 1, section 8, of the Constitution of the State of New York, which provides that " Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

It is the contention of the plaintiff, on the other hand, that the act in question was in all respects valid and that its provisions do not encroach upon any rights guaranteed to our citizens by either the Federal or State Constitution, and that in enacting the same the Legislature acted well within the police power of the State.

The act amends the Education Law in relation to the licensing and supervision of school courses, and should be read and construed in connection with and as a part of the parent act and limited in its application by said act. In construing the act it should be read in its entirety, and thus considered it becomes perfectly clear that the Legislature intended to confine its application to the licensing, supervision and control of schools, institutes or classes engaged in giving mental or vocational instructions within the purview of the Education Law. Reading the statute as a whole, it is evident that the Legislature, in using the words, " instruction in any subjects whatever," referred to and meant subjects taught in such schools or classes. The application for such license must be accompanied by a verified statement showing the purposes for which such school, institute, class or course is to be maintained and conducted, and the nature, extent and purpose of the instruction to be given. The immediately succeeding provision is that " no license shall be granted for the conduct of any such school, institute, class or course by the Regents of the University of the State where it shall appear that the instruction proposed to be given includes the teaching of the doctrine that organized governments shall be overthrown by force, violence or unlawful means, or where it shall appear that such school, institute, class or course is to be conducted in a fraudulent manner." The Legislature thus clearly evidenced the real reason underlying the enactment. It seems clear that the Legislature did not intend by the act to curtail or prevent instruction without a license in the art of dancing or in the sports of skating, swimming and the like, but merely sought to prohibit the teaching of such subversive doctrines as make for the overthrow of organized governments by force or violence. The practices inhibited by the act are too clearly indicated and expressed to be misunderstood, and the act is, therefore, not open to attack for unconstitutionality because of the aforesaid language respecting its general and unlimited application. The act, we think, is clearly limited in its application to the ordinary subjects of school curricula and prohibits the teaching of doctrines inimical to our form of government and tending to the destruction of organized government by force and violence. There can be little question but that it is within the power of the Legislature to enact statutes for the self-preservation of the State, and to prevent the teaching of doctrines advocating the destruction of the State by force. It is the duty of courts " to uphold a statute enacted by the Legislature as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law." (*New York Central & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 108, 127; *Admiral Realty Co.* v. *City of*

*New York*, 206 id. 110.) If a statute is susceptible of two constructions, " that construction should be given which assumes that the Legislature was mindful of its constitutional limitations, and passed a constitutional, and not an unconstitutional act." (*People* v. *Ringe*, 197 N. Y. 143; *People ex rel. Simon* v. *Bradley*, 207 id. 592; *Matter of Simmons* [*Catskill Aqueduct*], 206 id. 577; *City of New York* v. *Miln*, 11 Pet. 130; *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252.)

In enacting this statute the Legislature clearly sought to prevent the teaching of doctrines hostile to the safety of our government. We think the Legislature has as much right to enact a salutary statute to prevent the promulgation of doctrines inimical to our form of government, the putting into effect of which would lead to the conviction of those who had adopted said doctrines under existing penal law, as to punish those who were guilty of violating such penal laws. A State has as much right to guard against the commission of an offense against its laws as to inflict punishment upon the offender after it shall have been committed. The statute under consideration revealed a clear legislative intent to guard against teachings which would lead to the commission of crimes and offenses contrary to our laws. In *People* v. *Gitlow* (195 App. Div. 773, 785) Mr. Justice Laughlin, writing for a unanimous court, said: " ' It is not a particular crime — the murder or attempt at murder of any particular individual — which is to be prevented by additional penal legislation or for which additional punishment is to be provided, but rather the prevention of the spreading of doctrines hostile to the safety of our government and of all government, which inevitably tend to lead those who profess them to commit crimes, or at least prepare them mentally for their commission. This problem — of reaching those who profess and teach the doctrines of anarchy, without themselves attempting or committing or inciting others to attempt or commit any particular crime — is a difficult one. All will agree, however, that anarchy  *  *  *  is a criminal doctrine, the teaching and spreading of which should be prevented by penal legislation.' "

There is no unlawful discrimination in this statute. Teachers and schools can pursue their lawful callings without molestation, provided they do not instruct their pupils in the inhibited matters. The statute only aims to prevent the teaching and promulgation of doctrines and propaganda for the overthrow by force or violence of governments and the breaking down of civilized society. Every right of the defendant is guaranteed by the provisions of the statute. If the Board of Regents unjustly denies the defendant a license to pursue its course of instruction, or if a license theretofore granted is unjustly taken away from it, the defendant and all others affected

have the right to review such action through appropriate certiorari proceedings. In *People* v. *Gitlow* (195 App. Div.) it is further said (at p. 792): " Since it is competent for the Legislature to enact laws for the preservation of the State and Nation, the laws required for that purpose rest in the legislative discretion, and if they are reasonably adapted to that end and are based on danger reasonably to be apprehended, even though not present or immediate, they may not be annulled by the courts either on the theory that it would be wiser to leave it to the people to meet the pernicious doctrines by argument, or that they unnecessarily restrict the freedom of speech or of the press or of personal liberty. The Legislature within its authority has spoken for the People, and it is the duty of the courts to enforce the law."

All that it is necessary for the defendant or for any school applying for a license under the act to show is that its curiculum does not include the teaching of the inhibited doctrines. Having shown this, the Regents of the University have no discretion but to issue the required license. If such license be denied or a license granted be unjustly taken away, recourse may be had to the Supreme Court of the State to rectify the wrong. No arbitrary power whatever is lodged in the University of the State of New York with respect to the issuance or revocation of a license under the act.

Moreover, it seems to us that the act in question is well within the proper exercise of the police power by the State, and that for the purpose of protecting the peace, health, public safety and security of the citizens of the State, the Legislature had the right to enact the statute. The police power of the State is broad in its scope.

" In its most comprehensive sense it embraces the whole system by which the State seeks to preserve the public order, to prevent offenses against the law, to insure to citizens in their intercourse with each other the enjoyment of their own, so far as is reasonably consistent with a like enjoyment of rights by others. Under it persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State." (*Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271, 300.)

It was said in *People ex rel. Armstrong* v. *Warden, etc.* (183 N. Y. 223) that "A statute to promote the public health, the public safety or to secure public order, or for the prevention or suppression of fraud is a valid law, although it may, in some respects, interfere with individual freedom. All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good. It may be laid down as a general principle that legislation is valid which has for its object

the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality."

Viewing the statute in question as one enacted to restrain the dissemination of vicious doctrines leading to the overthrow of organized government by force and violence, the language of Mr. Justice Harlan in *Jacobson* v. *Massachusetts* (197 U. S. 26, 29) is in point. Mr. Justice Harlan said: " There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. * * * There is, of course, a sphere within which the individual may assert the supremacy of his own will and rightfully dispute the authority of any human government, especially of any free government existing under a written constitution, to interfere with the exercise of that will. But it is equally true that in every well-ordered society charged with the duty of conserving the safety of its members, the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand."

The learned counsel for the defendant insists that the statute transcends any valid exercise of the police power of the State, and urges that the exercise of the police power of the State is only justified in the interests of the public when it has for its object the promotion of public health, safety, peace, order, morals or general welfare, and that the prescribed measure must be reasonably necessary for the accomplishment of the end desired. It seems to us that every test thus laid down by counsel for the defendant is satisfied by the act under consideration. That the public interest is justified by the enactment of legislation aimed to prevent the teaching and promulgation of doctrines aimed at the destruction of organized government seems to us to be beyond cavil. Surely the act has for its object the promotion of the safety, peace, order, morals and general welfare of our citizens, and the prescribed measure is reasonably necessary to accomplish the desired end. So far as we know, the power of the Legislature to pass regulatory statutes governing the activities of our citizens, requiring in some cases the adoption of certain standards and in others requiring the issuance of licenses for the purpose of carrying on lawful trades and

professions, has never been successfully assailed. " Licenses may be properly required in the pursuit of many professions and avocations which require * * * supervision for the public welfare." (*Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746, 763.) The right of the Legislature to prescribe regulations subserving the public welfare, although in some cases interfering with private rights, cannot be questioned. However, such regulations cannot be arbitrary and disconnected with the ostensible purpose of serving the public welfare.

In Black's Constitutional Law (3d ed. pp. 600, 601) it is said: " While it may be true in a general sense that any person has a vested right to continue in the exercise of any lawful and innocent trade or pursuit in which he is engaged, this is not true of such occupations as are harmful in themselves or which are so far affected with a public interest as to require regulation under the police power. As to such avocations the Legislature may, without violating vested rights, prescribe new qualifications or restrictions, though the effect may be to put individuals out of business or deprive them of the benefit of licenses already granted * * * or impair the value of property devoted to a public use. * * * A more difficult question arises in the case of a statute requiring licenses, registration, submission to examination * * * for public teachers and attorneys at law * * * as applied to those who are lawfully engaged in their respective professions at the time of its enactment, and who had previously obtained the necessary licenses, shown the requisite qualifications, or otherwise fully complied with the law as then existing. But it is generally held that persons so situated have no vested right to continue in their occupations free from further regulation by the Legislature."

Any business of a public nature or affecting the public interest may be regulated by the Legislature under its police power. (*Hauser* v. *North British & Mercantile Ins. Co.*, 206 N. Y. 455.) There is no unlawful discrimination in the act against the defendant, or against any person, firm, corporation, association or society. True it is that the statute excepts from its application public schools of the city, union free and common school districts of the State, and educational institutions now or hereafter incorporated by the University of the State, or now or hereafter admitted to membership in the University of the State. The reason for such exception is clear, and lies in the fact that such educational institutions are already under the direct supervision and control of the Regents of the University of the State. There is also excepted from the application of the statute schools now or hereafter established and maintained by religious denominations or sects well recognized as

such at the time the act takes effect. Nor is a license required for classes conducted by fraternal orders which are incorporated under the laws of the State, which have for their purpose solely the instruction of the members in the ritual of such orders. The reasonableness of such exceptions is so clearly apparent as to admit of little controversy. The act, however, is made generally applicable to all other persons, firms, corporations, associations or societies maintaining or operating any school, institute, class or course of instruction in the State. The application of the statute, being thus general to a class, cannot be said to be discriminatory against the defendant or any other individual or corporation. The statute enables the defendant and all others, upon proper application, to obtain a license for giving instruction upon all proper subjects, and only prohibits the teaching of doctrines· inimical to our form of government. Inasmuch as the statute safeguards all legal rights of those seeking to conduct such institutions of learning, we think that the statute does not violate the constitutional provisions insuring to citizens the right of personal liberty and property. " Whenever the law operates alike on all persons and property, similarly situated, equal protection cannot be said to be denied." (*Walston* v. *Nevin*, 128 U. S. 578.)

In Tiedeman's Limitations, upon the subject of police power, it is said (at § 189, pp. 576, 578, 579) that " The subjection of existing corporations to new police regulations does not involve a repeal or amendment of the charters, for an act of incorporation simply guarantees to the incorporators the right to act and do business as a corporate body, subject, of course, to the laws of the land, and the legitimate control of government."

When it is made to appear that the statute " has a reasonable connection with the welfare of the public, the exercise of the police power by the Legislature is well established as not in conflict with the Constitution. * * * When thus exercised, even if the effect is to interfere to some extent with the use of property, or the prosecution of a lawful pursuit it is not regarded as an * * * encroachment upon liberty, because the * * * promotion of the general welfare, so essential to organized society, of necessity [involves] some sacrifice of natural rights." (*People* v. *Havnor*, 149 N. Y. 195, 201.)

In Tiedeman's Limitations, on the subject of police power (at p. 3, note), it is said: " With the Legislature the maxim of law ' *Salus populi suprema lex* ' should not be disregarded. It is the great principle on which the statutes for the security of the people are based * * *. This power has always been exercised, and its existence cannot be denied. How far the provisions of the Legislature can

· extend, is always submitted to its discretion, provided its acts do not go beyond the great principle of securing the public safety, and its duty to provide for the public safety, within well defined limits, and with discretion, is imperative."

We are of the opinion that the statute under which the plaintiff seeks to enjoin the defendant, its agents, servants and employees from continuing the maintenance or conduct of the Rand School of Social Science, or any school, courses or classes of instruction under any name or title, without making application for and being granted a license from the University of the State of New York to so conduct, maintain or operate such school, classes or courses of instruction, is constitutional, and its enactment by the Legislature within the police power of the State.

. We, therefore, conclude that the plaintiff is entitled to the injunction for which it asks, and a judgment accordingly should be entered in plaintiff's favor and against the defendant, with the costs and disbursements of the action.

CLARKE, P. J., SMITH and PAGE, JJ., concur; GREENBAUM, J., dissents.

Judgment ordered for plaintiff, with costs.    Settle order on notice.