INSTITUTE OF THE METROPOLIS, INC., Plaintiff, *v.* UNIVERSITY OF THE STATE OF NEW YORK and Others, Constituting the Regents and the Board of Regents of The University of the State of New York, Defendants.

Supreme Court, Special Term, Albany County, May 25, 1936.

*Simon H. Braunstone*, for the plaintiff.

*John J. Bennett, Jr., Attorney-General* [*Dorothy U. Smith* of counsel], for the defendants.

SCHENCK, J.    This is a motion for judgment on the pleadings. The action is brought by the plaintiff for a declaratory judgment to the effect that section 66 of the Education Law is unconstitutional, and that the rules enacted thereunder are invalid.

Plaintiff is a corporation chartered under the laws of the District of Columbia, and is authorized and empowered to conduct three departments of education, to wit, legal science, accountancy and education.    It is not authorized to confer any academic or professional degree, but may grant certificates or diplomas to meritorious students.

It gives a one-year law school course.    It claims this course to be for students about to take bar examinations, business men, and others interested in law.    Section 66 of the Education Law, as amended (Laws of 1935, chap. 764), reads as follows:

" § 66.  Prohibitions.   1. No individual, association, copartnership or corporation not holding university, college or other degree conferring powers by special charter from the Legislature of this State or from the Regents, shall confer any degree or use, advertise or transact business under the name university or college, or any name, title or descriptive material indicating or tending to imply that said individual, association, copartnership or corporation conducts, carries on, or is a school of law, medicine, dentistry, pharmacy, veterinary medicine, nursing, optometry, chiropody, architecture or engineering, unless the right to do so shall have been granted by the Regents in writing under their seal."

The basis of this suit is the alleged unconstitutionality of section 66 of the Education Law, and the rules adopted pursuant to it.

The power of the Legislature in connection with the University of the State of New York is not expressly limited by the Constitution.

Section 2 of article 9 of the Constitution of 1894 provides as follows: " The corporation created in the year one thousand seven hundred and eighty-four, under the name of The Regents of the University of the State of New York, is hereby continued under the name of The University of the State of New York. It shall be governed and its corporate powers, which may be increased, modified or diminished by the Legislature, shall be exercised by not less than nine Regents."

As pointed out in the Constitution, in 1784 the Regents of the University of the State of New York was created. The University grew out of King's College which was continued under the name of Columbia College.

The Regents were given charge of this college, but in addition were vested with full power and authority to make ordinances for the government of the several colleges which should compose the University and they were empowered to found schools and colleges in any part of the State and to endow the same, vesting such colleges with power to confer degrees, directing the manner of their government. (Laws of 1784, chap. 51 [7th Session].)

Higher education was regulated by the State from this early period. The system of common schools was of slower growth. A common school law was passed in 1795 (Chap. 75), but it was not until 1812 (Chap. 242) that adequate provision was made for such schools. The act of 1812 inaugurated a system requiring teachers to be examined and licensed (§ VI), and providing funds to meet the expenses.

In 1821 there were 6,865 districts and about 375,000 pupils receiving instruction. There were also three general colleges, Columbia, Union and Hamilton, and two medical colleges, one in New York and one in Fairfield. In the general colleges there were 472 students and in the medical colleges, 263 students. (Lincoln's Constitutional History of New York, vol. 3, p. 509.)

In 1892, just prior to the adoption of the 1894 Constitution of the State of New York, the University Law was passed by the Legislature. (Laws of 1892, chap. 378.) It contained the following provisions:

" § 9. By-laws, ordinances and rules.— The Regents may as they deem advisable in conformity to law, make, alter, suspend or repeal any by-laws, ordinances, rules and resolutions for the accomplishment of the trusts reposed in them. No by-law, ordinance or rule by which more than a majority vote shall be required for any specified action by the Regents shall be amended, suspended or repealed by a smaller vote than that required for action thereunder."

" § 11. General examinations, credentials and degrees.—The

Regents may confer by diploma under their seal such honorary degrees as they may deem proper, and may establish examinations as to attainments in learning, and may award and confer suitable certificates, diplomas and degrees on persons who satisfactorily meet the requirements prescribed."

" § 24. Institutions in the University.—The institutions of the University shall include all institutions of higher education which are now or may hereafter be incorporated in this State, and such other libraries, museums or other institutions for higher education as may, in conformity with the ordinances of the Regents, after official inspection, be admitted to or incorporated by the University. The Regents may exclude from such membership any institution failing to comply with law or with any ordinance or rule of the University.

" § 25. Visitation and reports.—The Regents or their committees or officers shall visit, examine into and inspect the condition and operations of every institution and department in the University, and require of each an annual report verified by oath of its presiding officer, and giving information concerning trustees, faculty, students, instruction, equipment, methods, and operations, with such other information and in such form as may be prescribed by the Regents who shall annually report to the Legislature the condition of the University and of each of its institutions and departments, with any further information or recommendations which they shall deem it desirable to submit; and such parts of their report as they shall deem necessary for use in advance of the annual volume, may be printed by the State printer as bulletins. For refusal or continued neglect on the part of any institution in the University to make the report required by this section, or for violation of any law, the Regents may suspend the charter or any of the rights and privileges of such institution."

" § 27. Charters.—The Regents may, by an instrument under their seal and recorded in their office, incorporate any university, college, academy, library, museum, or other educational institution, under such name, with such number of trustees or other managers, and with such powers, privileges and duties, and subject to such limitations and restrictions in all respects as the Regents may prescribe in conformity to law."

" § 32. Conditions of incorporation.—No institution shall be given power to confer degrees in this State unless it shall have resources of at least five hundred thousand dollars; and no institution for higher education shall be incorporated without suitable provision, approved by the Regents, for buildings, furniture, educational equipment and proper maintenance. No institution shall institute

or have any faculty or department of higher education in any place or be given power to confer any degree not specifically authorized by its charter; and no institution of higher education shall be incorporated under the provisions of any general act authorizing the formation of a corporation without grant of a special charter on individual application, and no corporation shall, under authority of any general act, extend its business to include establishing or carrying on any such institution.

" § 33. Prohibitions.—No individual, association or corporation not holding university or college degree-conferring powers by special charter from the Legislature of this State or from the Regents, shall confer any degrees, nor after January first, eighteen hundred and ninety-three, shall transact business under, or in any way assume the name university or college, till it shall have received from the Regents under their seal written permission to use such name, and no such permission shall be granted by the Regents, except on favorable report after personal inspection of the institution by an officer of the University. No person shall buy, sell or fraudulently or illegally make or alter, give, issue or obtain any diploma, certificate, or other instrument purporting to confer any literary, scientific, professional or other degree, or to constitute any license, or to certify to the completion in whole or in part of any course of study in any university, college, academy or other educational institution. Nor shall any person with intent to deceive, falsely represent himself to have received any such degree or credential. Counterfeiting or falsely or without authority making or altering in a material respect any such credential issued under seal shall be a felony, and any other violation of this section shall be a misdemeanor; and any person who aids or abets another, or advertises or offers himself to violate the provisions of this section, shall be liable to the same penalties."

This was the situation when the 1894 Constitution was adopted. All of these rights and powers enumerated above were, in effect, confirmed by the Constitution, and the Legislature was given an unlimited discretion to deal with the matter of education subject only to the general fundamental restrictions contained in the Constitution.

The regulation of educational institutions is peculiarly a matter affected with the public interest and involves the welfare and morals of citizens and even the safety of the State. (*People* v. *American Socialist Society*, 202 App. Div. 640.)

In general, it has been held that the State may require a license of a physician, surgeon, dentist, lawyer and school teacher. (*Lehmann* v. *Board of Accountancy*, 263 U. S. 394; *Douglas* v. *Noble*, 261 id. 165.)

And a school giving instruction in any subjects may be required to obtain a license from the University of the State of New York for the purpose of seeing to it that no doctrine advocating the overthrow by force of organized government shall be taught. (*People* v. *American Socialist Society, supra.*)

There is no vested right to continue in the exercise of a lawful and innocent pursuit or calling. Any occupation may not be harmful in and of itself, but it may become so affected with the public interest and the safety and well-being of the State and its citizens as to require regulation. (*Roman* v. *Lobe*, 243 N. Y. 51.)

It is proper for a Legislature to commit to an administrative board the determination of a standard of fitness where the subject necessarily involves technical training and varying standards. (*Lieberman* v. *Van de Carr*, 199 U. S. 552; *Douglas* v. *Noble, supra.*)

While the Legislature may reasonably regulate education in all of its branches, and may require compulsory education, it cannot go beyond mere regulation and impose arbitrary or unreasonable restraints. Regulation does not involve the power to absolutely prohibit or suppress private schools, colleges or other institutions of learning. Regulations which are reasonable and which are designed to create a proper standard on the part of those who publicly hold themselves out as affording education facilities are not arbitrary, nor do they tend to suppress educational institutions, nor do they amount to class legislation where the conduct of such business is open to all who come up to the reasonable standard which may be adopted. (*Pierce* v. *Society of Sisters*, 268 U. S. 510.)

During the last hundred years the growth of educational institutions in the State of New York and the country at large has been phenomenal. Education has become so universal and complicated, and the need of it is so keenly felt, that of necessity there must be regulations in respect to this vast enterprise and in order to promote the welfare of the citizens and to secure the safety of the State.

Education is of such a nature that, necessarily, those who have acquired it must assist and protect those who desire to secure it. It comes only after long study and practical experience. Unless it is upon a sound basis and in the hands of competent teachers it must result in frustration and disappointment, usually during a period of life that cannot be wasted.

The corporation in question is not a mere business school with a course on commercial law. It advertises to give a complete legal education; it has a law faculty and is generally conducted as a law school but with a one-year course.

It is deemed necessary that a law school which is held out to the public as capable of teaching the subject of law have a course of instruction extending over three years.

" 1. Approved law schools shall be those which have been registered with and approved by the State Department of Education and which require attendance upon and successful completion of a three year course of instruction beginning after the student has attained the age of eighteen years, and consisting of at least ninety-six weeks of ten hours each, of attendance upon law lectures or recitations in prescribed courses given or conducted by regular members of the faculty, or those similarly registered and approved which conduct such classes and the additional four year course as stated below." (Rules of the Court of Appeals for the Admission of Attorneys and Counsellors-at-Law, rule IV.)

An approved law school should also have a proper library, equipment, plant and faculty.

Experience has demonstrated that without rigid regulation of institutions of learning, short-cuts are adopted and standards lowered to meet the ever-increasing demand for education. Due to the complication of modern affairs, the standards must be raised, not lowered. Viewing this matter from the standpoint of history, policy and precedent, there does not appear to be any objection to the reasonableness of section 66 of the Education Law, nor to the rules of the university requiring a three years' course of instruction on the part of an institution which conducts a school of law.

Section 66 prohibits a corporation not having degree-conferring powers from advertising or transacting business under any name, title or descriptive material and indicating or intending to imply that such corporation conducts a school of law, without the consent of the Regents.

In the case at bar the plaintiff does so advertise and transacts business under descriptive material indicating that it carries on a school of law.

The motion is granted and order may be entered accordingly. Ten dollars costs of motion.