Alfred H. Kleimah, J.
Pursuant to an information returned by the Grand Jury on January 17, 1973, the defendants, three New York City Police Officers, are charged with the crimes of assault in the third degree, possession of a dangerous instrument, and harassment. Defendants move to dismiss the count of the information charging them with possession of a dangerous instrument, upon the ground that they are immune from prosecution as to that alleged crime, by virtue of a statutory exemption.
The information charges that the police officers ‘ ‘ had in their possession a blackjack with intent to use same unlawfully against ” the complainants.
*1086 Subdivision 3 of section 265.05 of the Penal Law provides: “ Any person who has in his possession any firearm, gravity knife, switchblade knife, cane sword, billy, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a class A misdemeanor ”. (Emphasis added.) Subdivision 9 provides: “ Any person who has in his possession any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another is guilty of a class A misdemeanor”. (Emphasis added.)
Section 265.20 of the Penal Law under the heading ‘ ‘ Exemptions ” provides: “ a. Sections 265.05, 265.10, 265.15 and 270.05 shall not apply to:
“1. Possession of any of the weapons, instruments, appliances or substances specified in sections 265.05 and 270.05 by the following:
“ (a) * * * and peace officers as defined in subdivision thirty-three of section 1.20 of the criminal procedure law ”.
CPL 1.20 (subd. 33, par. [a]) defines a police officer as a “ peace officer ”.
Throughout the criminal law, a distinction is drawn between crimes which are ‘ ‘ mala prohibita in which no intent to do wrong is necessary to constitute the offense, and offenses that are mala in se in which a criminal intent is a necessary ingredient of the crime.” (People ex rel. Hegeman v. Corrigan, 195 N. Y. 1, 12 [1909]). So it is with the crimes of possession of dangerous weapons under section 265.05 of the Penal Law. They can be divided into two categories, those which the mere possession thereof constitutes a crime (i.e., subds. 1, 2 and 3) and those in which 11 intent to use the same unlawfully against another is a necessary ingredient which must be established in order to constitute the crime ” (i.e., subds. 7 and 9) (People v. Adamkiewicz, 298 N. Y. 176, 179 [1948]).
The People concede that as to the “ per se ” sections, including subdivision 3, police officers are exempt from prosecution. The defendants argue that a person charged with illegal possession of a blackjack can only be charged with violating subdivision 3 (and not subd. 9) since that weapon is one specifically enumerated therein, and accordingly the information should be dismissed as defective. This argument I cannot accept. It is true that the categorical distinction between the weapons specifically mentioned in the afore-mentioned subdivisions and others have been described as that between those which are inherently dangerous and those which may also be *1087 innocently carried or possessed (People v. Adamkiewicz, supra, p. 178), but this distinction is relevant only in the application of the statutory presumption of intent to use unlawfully, provided for in subdivision 4 of section 265.15. It is to be noted that the latter statute couples the weapons specifically enumerated in subdivision 9 with those 1 ‘ made or adapted for use primarily as a weapon ”. Accordingly, I hold that the fact that the alleged weapon is enumerated in any of the “ per se ” sections does not bar the People from choosing to charge a defendant with the crime of possession of a “ dangerous or deadly instrument or weapon with intent to use the same unlawfully against another ” pursuant to subdivision 9 of section 265.05 of the Penal Law. Whether or not the weapon allegedly used is a “ dangerous weapon ” is a question of fact for the jury.
Thus the principal issue presented to this court is whether a peace officer is exempt, pursuant to section 265.20 of the Penal Law, from prosecution for possession of a weapon with intent to use same unlawfully under subdivision 9 of section 265.05.
Put another way, the question is, does a peace officer have blanket immunity from prosecution for the crime of possession of a dangerous weapon even if he intended to use same unlawfully against another, or is such immunity limited to those crimes which are mala prohibita, i.e., the 11 per se ” sections?
The history of the New York State laws prohibiting the possession of dangerous weapons can be traced back to the Laws of 1849 when the singular weapon whose possession, use or attempt to use, was a crime was that of a “ slung shot ” (L. 1849, ch. 278, § 2). A slung shot is a piece of metal or stone fastened to a strap or thong, used as a weapon.
The above law was expressly repealed by the Laws of 1866 and a new law was enacted providing as follows (L. 1866, eh. 716): “ Section 1. Every person who shall within this State use, or attempt to use or with intent to use against any other person, shall knowingly and secretly conceal on his person, or with like intent shall willfully and furtively possess any instrument or weapon of the kind commonly known as slung-shot, billy, sand club or metal knuckles, and any dirk or dagger (not contained as a blade of a pocket knife), or sword cane or air gun, shall be deemed guilty of felony, and on conviction thereof may be punished by imprisonment in the State prison, or penitentiary or county jail, for a term not more than one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.
*1088 “ § 2. The having possession of any of the weapons mentioned in the first section of this act by any other them a public officer, willfully and secretly concealed on the person or knowingly and furtively carried thereon, shall be presumptive evidence of so concealing and possessing or carrying the same with the intent to use the same in violation of the provisions of this act.” (Emphasis added).
Two pertinent aspects of this century-old law are to noted. First it introduced the concept that whereas mere possession of these weapons was not illegal, it was their possession with intent to use against another (as well as the use, or attempted use) which was deemed a felony. Secondly, the concept of immunity of a “ public officer ” first appears, although limited to the presumptive evidence section.
In section 410 of the 1881 Penal Code (L. 1881, ch. 676, as amd. by L. 1884, ch. 46, § 8) the first law against possession of a firearm was enacted, limited to unlicensed persons under 18 years of age. The same chapter continued the provisions of the afore-mentioned Laws of 1866 with respect to certain weapons whose use or intended use against another, was a felony, and expanded the types of such weapons to include dangerous knives. It also re-enacted the exemption of “ public officers ” from the presumptive evidence rule (§ 411).
In 1905, section 410, as amended, read as follows: “ A person who * * * possesses any instrument or weapon of the kind commonly known as a slungshot, billy, sandclub or metal knuckles, or who with intent to use the same against another, carries or possesses a dagger, dirk or dangerous knife is guilty of a felony.” (L. 1905, ch. 92, § 2; emphasis added).
Thus for the first time a distinction was made between those weapons which were mala prohibita, and those which were mala in se.
Section 410 was also amended in 1905 by adding the following provision: ‘ ‘ This section shall not apply to * * * sheriffs, policemen, or to other duly appointed peace officers, nor to duly authorized military or civil organizations when parading, nor to the members thereof when going to and from the places of meeting of their respective organizations.” (Ibid.)
Thus it appears that policemen were given immunity from prosecution, not only from crimes of possession per se of weapons, but even from the possession of weapons with intent to use same against another unlawfully. While it is true that the word “ unlawfully ” was not specifically used in the 1905 law, if any doubts have to be erased as to the broad immunity *1089 granted, one has only to read section 1897 of chapter 88 of the Laws of 1909, which subsequently became better known as the “Sullivan Law”. Subdivisidh 1 of section 1897 (L. 1909, ch. 88, as amd. by L. 1931, ch. 435) provided: “ 1. A person who attempts to use against another an imitation pistol, or who carries, or possesses, any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sand club, sandbag, metal knuckles, bludgeon, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine-gun, sawed off shot-gun, or any other dangerous or deadly instrument, or weapon, is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony.” (Emphasis supplied).
-Subdivision 13 of the same section specifically exempted “ policemen, or * * * other duly appointed peace officers ” from prosecution under this subdivision, as well as from the eleven other preceding subdivisions which together comprised a comprehensive law against the illegal possession of all kinds of dangerous weapons. Thus, a plain reading of the statute, as it them existed, was that policemen were exempt from the application of not only the laws against possession of dangerous weapons, but even of the laws against the carrying of those weapons whose possession was illegal only when possessed “ with intent to use the same unlawfully against another.” This immunity even applied to possession of a bomb with intent to use same unlawfully against another person (see L. 1921, ch. 297, § 1; § 1897, -subds. 2,13). Over the years this immunity section was amended to add other persons and conduct which were to receive exemption from the application of the weapons laws.
In 1963, section 1897 was recodified without substantive changes insofar as the relevant sections involved in this decision are concerned (L. 1963, ch. 136, § 2). Subdivision 1 was subdivided into two sections, separating those weapons whose possession per se were criminal (subd. 3) and those which required an intent to use unlawfully before becoming a violation (subd. 8). Subdivision 13 of former section 1897 was incorporated into a new section 1900 (L. 1963, ch. 136, § 5) under the heading “ Exemptions and Immunity ”.
It is interesting tó note that in 1965 the Penal Law was substantially revised in practically every area with the exception of those relating to possession of dangerous weapons (L. 1965, eh. 1030, eff. Sept. 1, 1967). Former section 1897 was renumbered 265.05 and section 1900 became 265.20. The only change in the *1090 latter section was the heading which reads “ Exemptions ” only. This is of little .significance as the character of a statute is determined “ by its provisions and not by its title”. (People v. O’Brien, 111 N. Y. 1, 59 [1888].)
The People argue that the intent of the Legislature to limit the exemption'provision to the “ per se.” weapons appears from the language of subdivision 1 of section 265.20 which reads that section 265.05 et seq. shall not apply to ‘ ‘ Possession of any of the weapons ” by peace officers etc. and should be strictly construed not to include the unlawful intent sections. A reading of the bill note prepared by the Joint Legislative Committee on Firearms and Ammunition submitted in connection with the revised section 1896 et seq. (eff. July 1, 1963), indicates no intention of change from the pre-existing law with respect to the immunity section. The note reads: “ Certain persons are given exemption and immunity throughout these provisions * * * Section 1900 defines all exemptions and immunity with respect to the preceding three sections [1897, 1898 and 1899]. These provisions are arranged according to the conduct * * * covered by the exemption in the identical order previously used of possession, manufacture, transport and disposal.” The report of the same legislative cominittee stated that it was the intention of the bill to reorder and rearrange all the then existing provisions of the Penal Law relating to weapons and dangerous instruments, and listed the intended omissions (see Report of New York State Joint Legislative Committee on Firearms and Ammunition, N. Y. Legis. Doc., 1962, No. 29, p. 20). The enumerated omissions made no reference to the exemption provisions.
It is further argued that the Legislature could never have intended, even in the prior laws, to extend, immunity to the possession of weapons with an unlawful intent. While it may be true that the intention of the Legislature in the original enactment of many of the provisions of this law may have been obscured “ by contradictory provisions and bad draftsmanship ” (People v. Raso, 9 Misc 2d 739, 740 [1958, Sobel, J.]) and by dozens of amendments that have been enacted, since 1849, insofar as the 1905 and 1909 laws on exemptions there is no room for construction of those statutes. As pointed out above, the plain reading of the earlier statutes was to grant a broad immunity to policemen and peace officers from all the provisions of the weapons and dangerous instruments law. ‘ ‘ This court has declared on numerous occasions that where the language of a statute is without ambiguity, and the meaning unequivocal, there is no necessity for resort to rules of construction ” (New Amsier *1091 dam Cas. Co. v. Stecker, 3 N Y 2d 1, 6 [1957]). As stated in McCluskey v. Cromwell (11 N. Y. 593, 601 [1854]), “It is not allowable, to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture, in order to restrict or extend the meaning.” The legislative intent must, be assumed from a literal reading of the words and language of the statute (People v. Shafer, 30 A D 2d 213, 216 [4th Dept., 1968]; Wiley v. Solvay Process Co., 215 N. Y. 584 [1915]) and from such literal reading of those earlier laws the court must necessarily conclude that the Legislature intended to give policemen and other peace officers total immunity from prosecution for possession of weapons of any kind, even though such weapon may be possessed with an unlawful intent to use same against another.
Even though it might be argued that the language of subdivision 1 of section 265.20 contains ambiguities which did not appear in the earlier acts, this court has found no applicable rule of construction or extrinsic aid that would indicate a change of the Legislature’s intent of granting broad immunity to peace officers. Whereas section 5.00 of the Penal Law (and its predecessors) states: “ The general rule that a penal statute is to be strictly construed does not apply to this chapter ”, our highest courts have chosen to ignore this statutory rule in favor of the traditional rule that penal statutes are to be strictly construed against the party seeking their enforcement, and in favor of the person being proceeded against (People v. Shapiro, 4 N Y 2d 597, 601 [1958]; People v. Nelson, 153 N. Y. 90 [1897]; People v. Broady, 5 N Y 2d 500 [1959], citing Yates v. United States, 354 U. S. 298 [1957]). Penal statutes cannot be extended to cover cases that are not clearly covered thereby (People v. Nelson, supra, p. 94).
In construing an act it must be read in its entirety (People v. American Socialist Soc., 202 App. Div. 640, 645 [1st Dept., 1922]). Other subdivisions of section 265.20 further support the view that the Legislature has continued the grant of broad immunity to peace officers. Persons in military service of the State of New York or of the United States, wardens or superintendents of a State prison, etc. are granted immunity only if in pursuit of official duty or when duly authorised to carry the weapon by regulation or order (§ 265.20, subd. 1, pars, [a], [b] ; subd. 2). But as to peace officers, no such qualification appears in the statute. Thus even taking judicial notice of the fact that a policeman in New York City is not authorized by Police Department regulations to carry a blackjack, let alone use it, he is still *1092 immune from prosecution for possession per se of this weapon, This the District Attorney concedes. As recently as 1969 section 265.20 was amended to extend the exemption to possession of noxious materials (§ 270.05) without any qualification as to authorized use. The exemption is not limited to 265,05 ; it specifically extends also to 265.10 and 265.15. Thus a peace officer appears to have statutory immunity from prosecution for possession of weapons, including firearms, for unauthorized manufacturing of such weapons, for defacing them, or for selling them to an infant under 16 years of age (§ 265.10, subds. 1, 5, 6).
The granting of such blanket immunity from prosecution to peace officers is, in this court’s opinion, not only unwise, undesirable and unnecessary, but is unjust. Thus, if it were proved that a peace officer intended to pistol-whip an innocent bystander, he would be immune from prosecution for the crime of unlawful possession of the weapon. Such result is offensive to one’s sense of justice. There is a flagrant inequality in this law. But this court cannot remedy the inequity by judicial legislation. (See People v. Ahearn, 196 N. Y. 221 [1909]; New York Rapid Tr. Corp. v. City of New York, 275 N. Y. 258 [1937]); this court cannot create exceptions to this immunity statute (see Bradley v. Buffalo, N. Y. & Erie R. R. Co., 34 N. Y. 427, 431 [1865]); this court cannot correct supposed errors, omissions or defects in legislation, nor add meaning to something which the Legislature could have easily expressed but did not (Meltzer v. Koenigsberg, 302 N. Y. 523, 525 [1951]) “ ‘ The office of interpretation is to bring sense out of the words used, and not bring a sense into them.’ ” “A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged the problems and complications which might arise in the course of its administration” (Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639 [1944]).
Assuming, even, that the Legislature did not give thought to the consequences of the law insofar as the present, or similar circumstances are concerned, this court must still “ leave to the legislative department to supply a supposed or actual casus omissus, [rather] than attempt to do it by judicial construction ” (People ex rel. Brown v. Woodruff, 32 N. Y. 355, 364 [1865]), “ However just and desirable it may be ” (McKuskie v. Hendrickson, 128 N. Y. 555, 558 [1891]). What this court-cannot remedy the Legislature can. The Legislature must be aware of the defects m this law. There is currently before the Legislature a proposed bill (S3719; A3952) which was submitted with
*1093 the primary aim of strengthening the present weapon laws, particularly with respect to hand guns. It is significant that this bill makes possession of any weapon by a peace officer, etc. “ who is authorized by regulation or order of his employer to possess the same ” an affirmative defense (as distinct from granting immunity). But even such affirmative defense is not provided for (nor should it be) if such weapon is possessed under circumstances evincing an intent to use the same unlawfully against another (see proposed § 265.15, subd. [4]; § 265.25, subd. [a]; S 3719).
While the identical or a similar bill has been repeatedly submitted to the Legislature in recent years, the Legislature, in its wisdom (or lack of it), has resisted its passage. Police officers should be given the maximum protection from prosecution in connection with carrying out their onerous duties. But nobody, including police officers, should be exempt from prosecution for violating a law in which criminal intent is a necessary ingredient.
For all the reasons above stated, the motion to dismiss the count- of the information charging the defendants with unlawful possession of a dangerous weapon is reluctantly granted. This case is set down for the trial of the remaining counts of the information in Jury Part I on May 29.